FILED
DEC 17 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **SUPERSEDING** |
| | ) | **INDICTMENT** |
| Plaintiff, | ) | |
| | ) | JUDGE JACK ZOUHARY |
| v. | ) | |
| | ) | CASE NO. 3:22-CR-228 |
| ANKITA SINGH, | ) | Title 18, United States Code, |
| | ) | Sections 1035(a)(2), 1347, 1957, |
| | ) | and 2; Title 42 United States |
| Defendant. | ) | Code Section 1320d-6(a). |

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Defendant and Relevant Entities

1.      Defendant ANKITA SINGH was a physician licensed by the State of Ohio Medical Board.

2.      Defendant's medical practice focused on primary care and family medicine and was located at doctor's offices and hospitals in Maumee and Toledo, Ohio, in the Western Division of the Northern District of Ohio.

3.      Defendant used a Gmail.com email account for her businesses and finances, which was generally operated through servers outside the State of Ohio, dr.ankitasingh@gmail.com ("SINGH Email").

4.      Defendant controlled a University of Toledo Federal Credit Union checking account ending in 2770-090, in her name ("SINGH Account"). University of Toledo Federal Credit Union was a federally insured financial institution headquartered in Toledo, Ohio.

ORIGINAL

5. Defendant owned and controlled a limited liability company formed and registered under the laws of the State of Ohio: Lifeline Wellness, LLC ("Lifeline").

6. Defendant controlled a Digital Federal Credit Union savings account, ending in 9417-1, in Lifeline's name ("Lifeline Account"). Digital Federal Credit Union was a federally insured financial institution headquartered in Marlborough, Massachusetts.

7. Real Time Physicians, LLC ("Real Time") was a limited liability company formed under the laws of Nevada and was owned and operated by Mark Sporn (charged separately), a resident of Palm Beach County, Florida. Real Time was a purported telemedicine company.

8. Expansion Media, LLC ("Expansion"), was a limited liability company formed under the laws of Florida and was owned and operated by Steven Richardson (charged separately), a resident of Broward County, Florida. Expansion was a purported telemedicine company.

9. Defendant was employed by and worked as an independent contractor for Real Time and Expansion and conducted that work from her home located in the Northern District of Ohio, Western Division, and elsewhere.

<u>The Medicare Program</u>

10. The Medicare Program ("Medicare") was a Federal health care program that provided free or below-cost health care benefits to persons who are at least sixty-five years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

11. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

12. Medicare was made up of several component "parts" that covered different items and services. Medicare Part B covered, among other items and services, outpatient care and supplies, including orthotic devices "braces", referred to as durable medical equipment ("DME"). Medicare Part B covered claims submitted for DME, including off-the-shelf knee braces, suspension sleeves, back braces, shoulder braces, ankle braces, and wrist braces, if the DME was medically reasonable and necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed medical practitioner. 42 U.S.C. § 1395y(a)(l)(A). Medicare Part D covered prescription drugs that were dispensed upon a valid prescription for a "medically accepted indication." 42 U.S.C. § 1395w-102(e).

13. To help administer Medicare, CMS contracted with private insurance companies called "Medicare Administrative Contractors" or "MACs." MACs performed many functions, such as enrolling providers and DME suppliers into the Medicare program and processing Medicare claims. In Ohio, the MAC was CGS Administrators, LLC.

14. Federal law states that Medicare will only pay for items that are medically reasonable and necessary for the treatment of a beneficiary's illness or injury and that are prescribed by a licensed medical practitioner who is treating the beneficiary. 42 U.S.C. § 1395y(a)(1)(A).

## DME

15. Orthotic devices, or "braces," are a type of durable medical equipment prosthetic, orthotic, and supplies ("DMEPOS" or "DME") that include rigid and semi-rigid devices, such as

3

knee braces, back braces, shoulder braces, and wrist braces. Section 1847(a)(2) of the Social Security Act defined off-the-shelf orthotics as those orthotics described in Section 1861(s)(9) of the Act for which payment would otherwise be made under Section 1843(h) of the Act, which required minimal self-adjustment for appropriate use and did not require expertise in trimming, bending, molding, assembling, or customizing to fit to the individual. Orthotics that were paid for under Section 1834(h) of the Act and were described in Section 1861(s)(9) of the Act were leg, arm, back, and neck braces. The Medicare Benefit Policy Manual (Publication 100-2), Chapter 15, Section 130 provided the longstanding Medicare definition of "braces." Braces were defined in this section as "rigid or semi-rigid devices which were used for the purpose of supporting a weak or deformed body member or restricting or eliminating motion in a diseased or injured part of the body."

16. Title XVIII of the Social Security Act (SSA) § 1862(a)(l)(A), stated that no Medicare payment shall be made for items or services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of malformed body member."

17. To participate in Medicare, providers were required to submit an application in which the provider agrees to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

18. DME supply companies submitted claims for payment of DME braces to MACs for beneficiaries in Ohio. Pursuant to Medicare requirements, DME supply companies had to

submit certain information relating to the beneficiary receiving the DME braces, including the following:

    a.    the type of service provided, identified by a designated Healthcare Common Procedure Coding System code;

    b.    the date of service or supply;

    c.    the referring physician's National Provider Identifier ("NPI");

    d.    the charge for the service;

    e.    beneficiary's diagnosis;

    f.    the NPI for the DME entity seeking reimbursement; and

    g.    certification by the DME provider that the DME braces are medically necessary.

19.    Further, before submitting a claim for a DME brace to a MAC, a DME supply company was required to have on file the following:

    a.    written documentation of a verbal order or a preliminary written order from a treating physician or qualified medical practitioner;

    b.    a detailed written order from the treating physician or qualified medical practitioner;

    c.    information from the treating physician or qualified medical practitioner concerning the beneficiary's diagnosis;

    d.    any information required for the use of specific modifiers;

    e.    a beneficiary's written assignment of benefits; and

    f.    proof of delivery of the DME brace to the beneficiary.

20. Medicare reimburses DME companies and other health care providers for services and items rendered to beneficiaries. To receive payment from Medicare, providers submit or cause the submission of claims to Medicare, either directly or through third parties, such as billing companies.

21. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and accompanied by a completed prescription for braces and other Medicare-required documents (collectively, "doctors' orders").

22. To receive Medicare reimbursement for benefits, items or services performed or provided to beneficiaries, practitioners had to apply for and execute a written provider agreement, known as a CMS Form 855. Defendant was an enrolled provider with Medicare and was revalidated every five years.

23. Defendant first became an approved Medicare provider on July 3, 2013. As part of her enrollment, Defendant certified that she agreed "to abide by the Medicare laws, regulations and program instructions" and acknowledged that "the Medicare laws, regulations, and program instructions are available through" the assigned Medicare contractor. Practitioners enrolled with Medicare had access to Medicare manuals, service bulletins, and local coverage determinations and policies describing Medicare coverage requirements for various services and items, including DME braces.

24. Defendant also certified that she "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity." The Medicare enrollment application signed by Defendant set forth various criminal offenses related to participation in

Medicare and the delivery of and payment for health care benefits, items, or services. Specifically, the Enrollment Application addressed Title 18, United States Code, Section 1035(a) which authorized criminal penalties against individuals:

> in any matter involving a health care benefit program who knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact; or makes any materially false, fictitious, or fraudulent statements or misrepresentations, or makes or uses any materially false[,] fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items or services.

## The Scheme to Defraud

25. In addition to her in-person medical practice at medical offices and hospitals in Maumee and Toledo Ohio, SINGH had a locum tenens contract, under which she purportedly worked as an independent contractor, for Real Time and Expansion.

26. From in or around June 2018, and continuing through in or around May 2021, in the Northern District of Ohio, Western Division, SINGH and others devised and intended to devise a scheme and artifice to defraud and obtain money and property from Medicare by means of false and fraudulent pretenses, representations, and promises, which money and property was used to enrich SINGH and others.

27. It was part of the scheme to defraud that at various times:

a. Call centers, some operating from outside the United States, targeted Medicare beneficiaries and promised free or low-cost medical products. After confirming beneficiaries' information, this information was used to prepare false medical records and DME order forms with the beneficiary's name and Medicare number.

b. The order forms included false medical information, such as a purported diagnosis and assessment to medically support one or more orders for braces, and a false certification that the brace was medically necessary for the identified Medicare beneficiary.

7

    c.    SINGH received unsigned orders from Real Time through a web portal created specifically to facilitate the fraud. The Real Time orders contained a beneficiary's name, Medicare identifier, pre-filled false diagnostic assessment and test information, and a false certification of medical necessity of the brace.

    d.    SINGH received unsigned orders from Expansion by email delivery to her SINGH email address, through DocuSign, a document signing software. The Expansion orders contained a beneficiary's name, Medicare identifier, pre-filled false diagnostic assessment and test information, and a false certification of medical necessity of the brace.

    e.    SINGH electronically signed orders for DME braces for Medicare beneficiaries (a) without seeing, speaking to, or otherwise communicating with or examining them; and (b) without regard to whether the beneficiaries needed the DME.

    f.    SINGH had not previously treated the beneficiaries for whom she signed orders for DME, nor had she previously examined the beneficiaries.

    g.    In signing the orders, SINGH falsely certified that she was treating the Medicare beneficiary identified in the order, had diagnosed the Medicare beneficiary with the identified medical condition, had performed a physical examination and other diagnostic testing, and the prescribed brace was medically necessary for the beneficiary.

    h.    SINGH also electronically signed false medical records for Medicare beneficiaries, stating that she had discussions with the identified Medicare beneficiary, although she had never examined nor assessed the beneficiary, had not performed nor ordered diagnostic testing for the beneficiary, had not spoken with the beneficiary, and had not otherwise established a doctor-patient relationship with the beneficiary that would permit her to assess the medical necessity of the device prescribed.

      i.     SINGH made materially false, fictitious, and fraudulent statements in the Medicare beneficiary's medical record to support the fraudulent orders and false and fraudulent claims for payment to Medicare.

      j.     SINGH was paid for each order she signed, despite never examining nor speaking to the patient. SINGH caused the orders that she signed, as the prescribing doctor, to be used and submitted as a false and fraudulent claim for payment for the brace by Medicare.

      k.     From on or about January 2019 through on or about May 2021, Defendant submitted and caused the submission of approximately $8,425,751.69 in false and fraudulent claims to Medicare for medically unnecessary DME. Medicare paid approximately $4,470,926.58 for those false and fraudulent claims.

## COUNTS 1 through 14
(Health Care Fraud, 18 U.S.C. §§ 1347 and 2)

The Grand Jury charges:

28.     The factual allegations of paragraphs 1 through 27 of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

### Execution of the Scheme

29.     On or about the following dates, in the Northern District of Ohio, Western Division, and elsewhere, Defendant ANKITA SINGH, having participated in the foregoing scheme and artifice to defraud health care benefit programs, and to obtain by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of those health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, while aiding and abetting others, knowingly and willfully executed, and attempted to execute, the scheme described above by causing to be

9

submitted the following claims for reimbursement to Medicare, each submission constituting a separate count of this Superseding Indictment:

| COUNT | BENEFICIARY | APPROXIMATE DATE CLAIM SUBMITTED | APPROXIMATE DATE CLAIM PAID | ITEM ORDERED |
|---|---|---|---|---|
| 1 | A.H. | 11/13/2019 | 11/18/2019 | L1851 |
| 2 | A.H. | 11/13/2019 | 11/18/2019 | L1851 |
| 3 | A.H. | 11/13/2019 | 11/18/2019 | L0648 |
| 4 | A.H. | 11/13/2019 | 11/13/2019 | L1906 |
| 5 | T.S. | 4/14/2020 | 4/15/2020 | L1851 |
| 6 | T.S. | 4/14/2020 | 4/15/2020 | L1851 |
| 7 | T.S. | 4/14/2020 | 4/15/2020 | L3916 |
| 8 | T.S. | 4/14/2020 | 4/15/2020 | L3916 |
| 9 | T.S. | 4/14/2020 | 4/15/2020 | L0650 |
| 10 | B.R. | 12/28/2020 | 12/30/2020 | L0648 |
| 11 | S.L. | 1/7/2021 | 1/8/2021 | L3916 |
| 12 | S.L. | 1/7/2021 | 1/8/2021 | L3916 |
| 13 | S.L. | 1/7/2021 | 1/8/2021 | L0648 |
| 14 | S.L. | 1/7/2021 | 1/8/2021 | L1851 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

COUNTS 15-20
(False Statements Relating to Healthcare Matters, 18 U.S.C. §§ 1035(a)(2) and 2)

The Grand Jury further charges:

30. The factual allegations of paragraphs 1 through 27 of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

31. On or about the following dates, in the Northern District of Ohio, Western Division, and elsewhere, Defendant ANKITA SINGH in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program affecting commerce, did knowingly and willfully make materially false, fictitious, and fraudulent statements and misrepresentations, and did make and use materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to

wit, Defendant made and caused to be made and submitted materially false, fictitious, and fraudulent statements in the patient records for the following patients on the approximate dates indicated, in connection with claims for reimbursement, each materially false, fictitious, and fraudulent statement constituting a separate count of this Superseding Indictment:

| Count | Patient | Approximate Date of Statement | Description of False Statement |
|---|---|---|---|
| 15 | B.R. | 12/28/2020 | "I certify that the patient has the medical condition(s) listed and is being treated by me. All the information contained on this physician's order accurately reflects the patient's medical condition(s) and is medically necessary with reference to the standards of medical practice for this patient's condition(s)." |
| 16 | B.R. | 12/28/2020 | "Ms. [R.] has requested Orthotics for Lumbar pain relief. Based on the discussions with the Intake Rep and [B.], I am writing a prescription for the L1851. The process has been explained to [B.] as well as what to expect from the results." |
| 17 | B.R. | 12/28/2020 | "I established a valid prescriber-patient relationship with private communication, the Patient [B.R.], which continued through the consult date and/or date of this prescription." |
| 18 | S.L. | 1/7/2021 | "Ms. [L.] has requested Orthotics for Knee pain relief. Based on the discussions with the Intake Rep and [S.], I am writing a prescription for the L1851. The process has been explained to [S.] as well as what to expect from the results." |
| 19 | S.L. | 1/7/2021 | "I established a valid prescriber-patient relationship with private communication, the Patient [S.L.], which continued through the consult date and/or date of this prescription." |
| 20 | S.L. | 1/7/2021 | "I certify that the patient has the medical condition(s) listed and is being treated by me. All the information contained on this physician's order accurately reflects the patient's medical condition(s) and is medically necessary with reference to the standards of medical practice for this patient's condition(s)." |

All in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

COUNT 21
(Engaging in Monetary Transactions in Criminally Derived Property, 18 U.S.C. § 1957)

11

The Grand Jury further charges:

32. The factual allegations of paragraphs 1 through 27, and Counts 1-20, of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

33. On or about August 10, 2020, in the Northern District of Ohio, Western Division, and elsewhere, the Defendant ANKITA SINGH, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00, to wit: a payment by check, number 226, for $25,000.00 to Lifeline account from SINGH account 2770-090, such property having been derived from specified unlawful activities, that is, any act or activity constituting an offense involving a Federal healthcare offense, namely, Health Care Fraud and False Statements Relating to Health Care Matters, in violation of Title 18, United States Code, Section 1957.

## COUNT 22
(Wrongful Disclosure of Individually Identifiable Health Information, 42 U.S.C. § 1320d-6(a) and 18 U.S.C. § 2)

The Grand Jury further charges:

34. The factual allegations of paragraphs 1 through 27, and Counts 1-20, of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

35. Defendant ANKITA SINGH operated as a health care provider, as defined by Title 42, United States Code, Section 1320d(3) and Title 45, Code of Federal Regulations, Section 160.103.

36. SINGH was a covered entity, as described in the Health Insurance Portability and Accountability Act ("HIPAA") privacy regulation, Title 42, United States Code, Section 1320d-6(a). The patient records maintained by SINGH contained "individually identifiable health

12

information," and "protected health information," as defined by Title 42 United States Code, Section 1320d(4), (6) and Title 45, Code of Federal Regulations, Section 160.103.

37. Real Time and Expansion were purported "telemedicine" companies engaged in DME fraud.

38. In or around January 2019 to in or around May 2021, in the Northern District of Ohio, Western Division, and elsewhere, Defendant ANKITA SINGH did knowingly and without authorization, use, cause to be used, and obtained, protected individually identifiable health information relating to an individual that was maintained by a covered entity, as defined in Title 45, Code of Federal Regulations, Section 160.103, to wit: SINGH used, caused to be used, and obtained patient records containing individually identifiable health information without authorization from the patient, in violation of Title 42, United States Code, Section 1320d-6(a) and 18 United States Code, Section 2.

## FORFEITURE

The Grand Jury further charges:

39. For the purpose of alleging forfeiture pursuant to Title 18 United States Code, Section 982(a)(1) and (a)(7), the allegations of Counts 1 through 21 are incorporated herein by reference. As a result of the foregoing offenses, Defendant ANKITA SINGH, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the violations charged in Counts 1 through 20; and all property, real or personal, involved in the offense charged in Count 21, or any property traceable to such property; including, but not limited to, a money judgment in the amount of the proceeds traceable to the violations charged in Counts 1 through 21.

## SUBSTITUTE ASSETS

40. If, as a result of any act or omission of Defendant, any property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person:

   c. has been placed beyond jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been comingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of Defendants up to the value of the forfeitable property described above.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.